John G. Chapman, *adm'r of* Samuel Chapman *vs.* William Morris.—*December*, 1837.

A party who sells property and receives the proceeds thereof as the agent of another, who held the same in trust, is liable to said trustee, in an action for money had and received, notwithstanding the cestui que trust knew of, and consented to the sale.

The mere circumstance of the cestui que trust knowing of and consenting to the sale, would not release the trustee from his responsibility to the cestui que trust.

To accomplish that, it would be necessary to show, that the latter consented to look to the party who made the sale for the proceeds of the property.

And in a suit by a trustee under such circumstances, his right to recover does not depend upon his having made advances to his cestui que trust, upon the faith of the trust fund.

Appeal from *Charles* county court.

On the 7th March, 1825, *William Morris* commenced an action of *trespass* on the case against *Samuel Chapman.* His death was suggested, and *John G. Chapman*, his administrator, appeared.

The plaintiff declared that the said *Samuel Chapman* in his life-time, acting for and in behalf of the said *William*, who then, and there, had and held, certain negro slaves in trust for the use and benefit of a certain *Sarah Maddox ;* he the said *Samuel*, at the request of the said *William*, sold and delivered to divers persons the said negro slaves, and received

therefor the sum of $1,457, which said sum of like money, the said *William* hath since paid and satisfied to the said *Sarah Maddox,* by and under a decree of *Charles* county court, in chancery sitting ; of which said several matters and things, the said *Samuel* in his life-time had notice, whereby an action hath accrued to the said *William,* to have and demand of the said *Samuel* in his life-time, the said last mentioned sum of $1,457, and he the said *Samuel* being so indebted, in consideration, undertook and promised the said *William* to pay him the said sum of money. The second and third were the common money counts.

The fourth count was for matters and things properly chargeable in account as per account filed as follows :

*Samuel Chapman,* in account with *William Morris.*

28th Sept. 1818. To this sum the proceeds of the sales of certain negroes sold by you under my authority and by my consent,      .      .      .      .      .      .      .      $1,457

To interest thereon from date.

To this sum, the costs and charges of a certain Chancery suit, in which *Sarah Maddox* was complainant, and *William Morris* respondent, paid, laid out, and expended for your use,      .      .      .      .      .      .      .      .      .      $150

   *E. Exp.*                               WM. MORRIS.

Issue was joined upon the plea that *Samuel Chapman* did not promise in his life-time as alleged, &c.

EXCEPTION.—At the trial, the plaintiff gave in evidence, the certificate of *Samuel Chapman,* admitting the sale of, and receipt of money for certain negroes which were conveyed to *William Morris* by *Sarah Maddox,* amounting to the sum of $1,457; and that *Chapman* sold said negroes and received the money as agent of the plaintiff.

The defendant, to support the issue on his part, read a bill of sale, from *Sarah Ware,* (now *Maddox,*) to the plaintiff, dated 8th December, 1807, for the negroes in question, and proved that said conveyance was in trust for *Sarah Ware,* who soon after intermarried *John Maddox,* a man in embarrassed circumstances—that *Sarah Maddox,* consented that

said negroes should be sold, and directed that *Samuel Chapman*, should purchase out of the proceeds of the sale, groceries and other necessaries for her family—that he, the defendant, purchased for *Mr.* and *Mrs. Maddox*, articles to amount of $765 ; that *Maddox* admitted the same to be just, and to be paid for out of the proceeds of the negroes—that the plaintiff admitted that the proceeds of the negroes were for the benefit and use of *Mrs. Maddox*, and knew of the purchases by defendant, as aforesaid, and that *Chapman* had paid to *Morris*, $600, part of the proceeds of said negroes. The defendant then gave in evidence, certain proceedings on the equity side of *Charles* county court, by *Sarah Maddox*, against the plaintiff *Morris*, in which the said *Sarah Maddox* recognized her conveyance to the said *William Morris*, in trust, and her consent to a sale of said negroes, on condition that $1,000 of the money should be reserved for her especial use and benefit, and vested accordingly, that said *Morris* had neglected to pay said $1,000. On the 9th June, 1824, it appeared in said cause that, the said *Morris* was decreed to pay said *Sarah*, $654 20, with interest from 31st January, 1818.

The plaintiff then gave in evidence, the bill of interpleader of *Samuel Chapman*, and the answer thereto, in which *Chapman* claimed to receive from *Morris* $600, of the fund in controversy—and also gave in evidence that the money decreed to be paid by *W. Morris* to *Sarah Maddox*, was paid to her, and his answer to her bill showing payments to the amount of $892 90, and that the said sum was allowed to him in the settlement with *Sarah Maddox*.

The plaintiff further gave in evidence, that at or about the time of the sale of the said negroes, there was an agreement between all the persons concerned, that $1,000, of the proceeds of said sale of negroes, was to be reserved by said *Morris*, and to be applied to the purchase of a house and lot in *Port Tobacco*. That although *Morris* frequently saw articles delivered by the defendant, at the tavern kept by said *John Maddox*, yet it was not known to said *Morris*, so far as said

witness can speak, how or out of what fund the same were to be paid for; he further proved that said *Chapman*, at the times when said articles were delivered, and during the time said *Maddox* was keeping tavern, dealt largely in said tavern, and had a large account in said tavern, to furnish which said articles were delivered.—And the defendant gave in evidence that, the contract for the reservation of $1,000, was agreed to be rescinded by *Mrs. Maddox*, and said *Chapman*, though he does not know whether *Morris* knew that fact, and further gave in evidence by the same witness, that *Mr. Maddox* was largely indebted in house rent to the said *Chapman*.

The defendant then prayed the court to instruct the jury, if they shall find from the evidence, that the proceeds of said negroes came into the hands of the said defendant's intestate, by and with the permission of said *Sarah Maddox ;* that then the plaintiff cannot support the action on the count for money had and received, the said *Sarah Maddox* having the uncontrolled agency of the fund, and consenting that the said *Chapman* should receive the same. He, the said *Chapman*, is only responsible to the said *Sarah Maddox ;* and that the plaintiff cannot recover, unless the jury further believe from the evidence, that the trustee had made advances on the faith of the trust fund, to the amount thereof, which have not been allowed to him; which prayer and direction the court refused to give, and the defendant excepted.

The jury found a verdict, upon which the court gave judgment, for the plaintiff, $1,879 75, on which this appeal was taken.

The cause was argued before ARCHER, DORSEY, and CHAMBERS, Judges.

T. S. ALEXANDER, for the appellants, contended:

1. That the trust reposed in the appellee by *Mrs. Ware*, now *Maddox*, being by parol only, and the negroes having been delivered by the appellee to the appellant's intestate, *to be sold with the consent of Mrs. Ware*, the said intestate was

thereby substituted as trustee for *Mrs. Ware,* and became responsible to her only for the discharge of his trust, and at all events was not liable to be sued by the appellee as for *money had and received* to his use. 9 *East.* 378. 9 *Con. Ch. R.* 1. *Price and Nesbit vs. Bigham,* 7 *Har. and John.* 319. 1 *Mad. Ch. Pr.* 474.

2. Because if said intestate was liable to the appellee at all, such liability was limited in extent to the liability of the appellee over to the said *Mrs. Ware,* and therefore upon the case attempted to be made, the appellee ought to have been permitted to recover of the appellant no more than he had paid or was bound to pay to *Mrs. Ware.*

3. Because the payments made by the appellant's intestate to *Mrs. Ware,* with the consent of the appellee, were good payments in law and ought to have been allowed as such in the present action.

J. JOHNSON, for the appellee, maintained :

1. That it appearing from the evidence, that the intestate of the appellant sold the negroes in question, and received the money for them as the agent of the appellee, he was liable to the latter in an action for money had and received; the more especially, as the record discloses the fact, that the appellee has actually been compelled to pay the same to *Mrs. Maddox* by the decree of a court of competent jurisdiction.

2. That though the record shows the amount of the principal sum, decreed by the *Charles* county court in the case of *Maddox* against the appellee, there is nothing by which it can be ascertained how much was actually paid by the latter, including interest, costs, and other expenses attending the defence of said suit, all of which were proper subjects for the consideration of the jury.

3. That no question affecting the extent of the defendant's liability is presented by the exception taken by him in the court below, and consequently none such can be raised here. He cited : 2 *Com. on Cont.* 1. *Murphy vs. Baron,* 1 *Har. and Gill,* 258. *Com. Dig. Assumpsit, letter A. P.* 1. *Long-*

*champ vs. Kenny*, 1 *Doug*. 138.   *Moses vs. McFerlan*, 2 *Burr.*
1009.   *Grahame & Parris vs. Harris, et al*, 5 *Gill and John.*
489.

ARCHER, Judge, delivered the opinion of the court.

The prayer of the plaintiff is somewhat ambiguously
worded, but as we understand it, it embraces two proposi-
tions.   *First*—the general proposition that the plaintiff is
not entitled to recover if the proceeds came into the hands
of the intestate by the consent of *Mrs. Maddox,* the *cestui
que trust ;* and *secondly,* that the plaintiff could only recover
in case the jury believed that the plaintiff had made advances
on the faith of the trust fund, to the amount thereof, which
have not been allowed him.

We think the court were right in rejecting these prayers.
The defendant's intestate was appointed to sell these negroes
by the plaintiff, with the consent of *Mrs. Maddox*, but that
fact alone would not release *Morris* from his responsibility as
a trustee.   To accomplish this purpose the prayer should
have gone further, and have put it to the jury to find the fact
that she had consented to look to the defendant's intestate for
the proceeds.   She might have consented to his agency in
the sale, knowing his responsibility to her trustee, without
meaning in any degree to have looked to him for the pro-
ceeds, otherwise than through her trustee ; and there is evi-
dence to go to the jury from which this fact might have been
inferred.   It would therefore have been erroneous to have
directed the jury that the reception of the proceeds by con-
sent of *Mrs. Maddox,* would prevent the plaintiff's recovery.

The second proposition is not sustained, because, if *Chap-
man* was appointed the plaintiff's agent to sell these negroes,
and there is evidence to go to the jury to prove this, still
notwithstanding her consent that *Chapman* should sell the
negroes, she may have looked to the responsibility of her
trustee, as *Chapman's* principal, and may have given her
consent to such agency, with no view to the substitution of
a new trustee.   In this point of view the right of the plain-

tiff's recovery could not be made to depend upon his advances to *Mrs. Maddox* upon the faith of the trust fund.

JUDGMENT AFFIRMED.